UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| DANIEL GENE BOZE, et al.,              | )                    |
|                                         | )                    |
|     Plaintiffs,                        | )                    |
|                                         | )                    |
| v.                                      | )  No. 2:23-cv-00068 |
|                                         | )                    |
| UNITED STATES DEPARTMENT OF             | )                    |
| AGRICULTURE, et al.,                    | )                    |
|                                         | )                    |
|     Defendants.                         | )                    |

**MEMORANDUM OPINION**

Daniel Gene Boze, Jimmy Joe Boze, and the Estate of Mary Ruth Boze ("Plaintiffs") bring this Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06 et seq. lawsuit against the United States Department of Agriculture ("USDA"), Risk Management Agency ("RMA"), and Federal Crop Insurance Corporation ("FCIC") ("Defendants"). Plaintiffs seek judicial review of Defendants' decisions denying them Section 20(i) determination to seek extra-contractual damages stemming from an insurance dispute.

Before the Court are cross-motions for judgment on the administrative record, which are fully briefed and ripe for review. (Doc. Nos. 50–53, 60–61). Also before the Court is Plaintiffs' Motion to Supplement the Agency Record (Doc. No. 54). For the following reasons, the Court will grant Plaintiffs' Motions (Doc. Nos. 50, 54), and will deny Defendants' Motion (Doc. No. 52).

I.   **REVIEW OF THE RECORD**[1]

      A.  Applicable Statutes and Regulations

The crop insurance policies at issue are subject to the Federal Crop Insurance Act ("FCIA" or "Act").  (See Case No. 2:21-cv-00021, Doc. No. 66 at 6).  The purpose of the Act is to "promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance."  7 U.S.C. § 1502(a).  Pursuant to this policy, the FCIC, "has been in the business of providing crop insurance directly to farmers since the 1930s."  Bachman Sunny Hill Fruit Farms, Inc. v. Producers Agric. Ins. Co., 57 F.4th 536, 538 (6th Cir. 2023).  "And ever since Congress enacted the Federal Crop Insurance Act of 1980, the FCIC and its administrator, the Risk Management Agency, have also reinsured policies offered to farmers by private insurers."  Id. (citing Ackerman v. U.S. Dep't of Agric., 995 F.3d 528, 529 (6th Cir. 2021)).  The RMA administers the Federal Crop Insurance Program ("FCIP") on behalf of the FCIC.  7 U.S.C. § 6933.  The FCIP allows the FCIC to "provide reimbursement, subsidies, and reinsurance for approved crop-insurance policies."  Bachman Sunny Hill Fruit Farms, Inc., 57 F.4th at 538 (citing Stephanie Rosch, Cong. Rsch. Serv., R46686, Federal Crop Insurance: A Primer, 25 (2021)).

These federally insured crop-insurance policies "are not typical private insurance agreements."  Id. (internal quotation omitted).  "[E]ach contract is 'between a farmer and an insurance provider,' but 'the FCIC determines the terms and conditions' of the policy."  Id. at 538–39 (6th Cir. 2023) (quoting Balvin v. Rain & Hail, LLC, 943 F.3d 1134, 1136 (8th Cir. 2019)).  In fact, the terms of the policies Plaintiffs bought from GAIC are set out in full in the Code of Federal

---

[1] These factual findings come from the Administrative Record, which are conclusive because they are supported by substantial evidence in the record.  Wokojance v. Weinberger, 513 F.2d 210, 212 (6th Cir. 1975).

2

Regulations. See 7 C.F.R. § 457.8. Only the FCIC may interpret these insurance policies and procedures:

> In any suit, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, an interpretation must be obtained from FCIC in accordance with 7 CFR 400, subpart X or such other procedures as established by FCIC. Such interpretation will be binding.

7 C.F.R. § 457.8.

Generally, federal crop insurance laws and regulations, like those in the policies Plaintiffs obtained from GAIC, preempt state and local crop insurance laws and regulations. 7 C.F.R. § 400.352. Still, the regulations and the *Common Crop Insurance Policy Basic Provisions* ("*Basic Provisions*")[2] governing such policies provide that insureds may obtain some extra-contractual damages under state law if they obtain a favorable Section 20(i) determination from the FCIC. To do so, the insured must satisfy two requirements. First, it must show that the FCIC, its agent or loss adjuster "failed to comply with the terms of th[e] policy or procedures issued by FCIC." (Doc. No. 1-1 ¶ 20(i)). Second, it must demonstrate that "such failure resulted in [the insured] receiving a payment in an amount that is less than the amount to which [the insured] w[as] entitled." (Id.); 7 C.F.R. § 400.176(b) ("Nothing precludes such damages being imposed against the [AIP] if a determination is obtained from FCIC [(1)] that the company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and [(2)] such failure resulted in the insured receiving payment in an amount less than the amount to which the insured was entitled."); see FAD-240 ("Any claim, including a claim for extra-contractual damages solely arising from a condition related to policies of insurance pursuant to the Federal Crop Insurance

---

[2] The *Basic Provisions* are a model policy promulgated by the FCIC for use by insurance companies providing crop insurance through the federal program. See 7 C.F.R. § 457.8.

Act (Act), may only be awarded if a determination was obtained from FCIC in accordance with section 20(i) of the Basic Provisions and § 400.176(b).").

### B. Plaintiffs' 2017 Crop Losses

Plaintiffs are burley tobacco farmers holding federally-insured Multi-Peril Crop Insurance ("MPCI") policies by the Great American Insurance Company ("GAIC") for their farm cropping activities in crop year 2017. (Doc. No. 1 ¶ 11). Plaintiffs each sustained losses on their burley tobacco crops, leading them to submit notices of loss to GAIC in June 2017, seeking indemnification for their losses. (Doc. No. 42 at RMA000856).

The *Basic Provisions* include the standards governing when indemnity is appropriate under the policies. Under Plaintiffs' insurance policies, indemnification depends, in part, on their good farming practices ("GFP") and the "causes of losses" ("COL") provisions in the *Basic Provisions*. Section 1 of the *Basic Provisions* defines GFP as:

> The production methods utilized to produce the insured crop and allow it to make normal progress toward maturity and produce at least the yield used to determine the production guarantee or amount of insurance, including any adjustments for late planted acreage, which are: (1) For conventional or sustainable farming practices, those generally recognized by agricultural experts for the area; or (2) for organic farming practices, those generally recognized by organic agricultural experts for the area or contained in the organic plan. We may, or you may request us to, contact the FCIC to determine whether or not production methods will be considered to be "good farming practices."

(Id. at RMA000070). Section 12 of the *Basic Provisions* defines COL as:

> Insurance is provided only to protect against unavoidable, naturally occurring events. A list of the covered naturally occurring events is contained in the applicable Crop Provisions. All other causes of loss, including but not limited to the following, are NOT covered:
>
> (b) Failure to follow recognized good farming practices for the insured crop[.]

(Id. at RMA000074). In accordance with Plaintiffs' policies and the *Basic Provisions* governing them, the Approved Insurance Provider ("AIP"), here GAIC, "makes decisions regarding what

4

constitutes good farming practices and determinations of assigned production for uninsured causes for [the insured's] failure to use good farming practices." (Id. at RMA000077).

GAIC Claims Manager Jamie Finlayson ("Finlayson") reviewed Plaintiffs' insurance claims. In a letter dated February 23, 2018 and signed March 1, 2018, Finlayson notified Plaintiffs of GAIC's determination that they "did not follow Good Farming Practices, as defined in [their] polic[ies'] Basic Provisions" and as a result, GAIC would close their claims "with no indemnity due." (Id. at RMA000068). Finlayson outlined four separate GFP violations by Plaintiffs. First, Plaintiffs applied "well above the recommended level" of chloride to their crops. (Id.). Second, they applied "well below the level" of suggested nitrogen required for their tobacco acreage. (Id.). Third, they failed to employ proper weed controls. (Id.). Fourth, Plaintiffs employed an excessive amount of muriatic potash to their burley tobacco crops. (Id.). Based on these findings, Finlayson concluded that Plaintiffs were not entitled to indemnity from GAIC, as they failed to follow GFP and therefore did not have a qualifying COL. (Id.).

C. Plaintiffs' Appeal and Administrative Process

Pursuant to 7 C.F.R. § 400.98, Plaintiffs filed formal requests for reconsideration of GAIC's GFP determination with the RMA of the USDA, acting on behalf of the FCIC. (Id. at 000855–000873). The Jackson Regional Office ("RO") of RMA, supported by further review from the Deputy Administrator, reviewed Plaintiffs' appeals. (Id.). Both determined that three of the four GFP failures that Finlayson identified as violations of Section 1 of the *Basic Provisions* were not meritorious. Specifically, the RMA determined that Plaintiffs' use of muriatic potash, nitrogen, and chloride was adequate. (Id. at RMA000868–000872). However, the RMA ultimately determined that "based on the evidence provided of the severe postemergence weed pressure in [Plaintiffs'] burley tobacco fields," Plaintiffs "did not follow good farming practices because they failed to implement appropriate weed control measures[.]" (Id. at RMA000872).

5

Based on this finding, the RMA upheld the GAIC's GFP determination, and advised Plaintiffs that if they did not agree with GAIC's determination, they could arbitrate or mediate the dispute in accordance with Section 20 of the *Basic Provisions*. (Id.).

Plaintiffs elected to do so. Plaintiffs and GAIC proceeded to arbitration in August 2020 before Arbitrator Michael Russel ("Arbitrator") on the question of whether Plaintiffs practiced GFP in light of the evidence about their inadequate weed control. (Doc. No. 42-2 at RMA002380). On November 2, 2020, the Arbitrator ruled in Plaintiffs' favor. He concluded that "[t]o the extent that [Plaintiffs] failed to follow good farming practices by failing to implement appropriate or additional post-emergence weed control measures, those failures did not cause or contribute to the [Plaintiffs'] losses in yield or quality in their 2017 Burley tobacco crop." (Id. at RMA002418). The Arbitrator then awarded Plaintiffs indemnity and interest in the following amounts:

| Insured | Policy No. | Indemnity | Interest |
|---|---|---|---|
| Daniel G. Boze | 2017-TN-084-111546 | $451,296.00 | $26,802.84 |
| Jimmy Joe Boze | 2017-TN-084-111549 | $295,985.00 | $17,356.52 |
| Mary Ruth Boze | 2017-TN-084-111551 | $402,394.00 | $23,596.39 |

(Id. at RMA002439). GAIC made full payment to Plaintiffs on November 9 and 12, 2020. (Id. at RMA002490–2496, RMA002505–2508).

Still, Plaintiffs desired extracontractual damages for their dispute with GAIC. To seek such damages in federal court, on January 26, 2021, Plaintiffs filed a request pursuant to Section 20(i) of the *Basic Provisions* "for a determination that Approved Insurance Provider [GAIC] failed to comply with the terms of [Plaintiffs'] 2017 federally-reinsured crop insurance policies and/or the procedures of the [FCIC], resulting in [Plaintiffs] receiving payment in an amount that is less than the amount to which they were entitled." (Id. at RMA002512). The same day, Plaintiffs filed Case No. 2:21-cv-00002 in this District, seeking recovery of extracontractual damages beyond their arbitration award. (See Case No. 2:21-cv-00002, Doc. No. 1).

On December 3, 2021, Heather Manzano ("Manzano"), Deputy Administrator for Compliance at the RMA, issued a decision on Plaintiffs' Section 20(i) request. (Doc. No. 42-2 at RMA002712). First, Manzano explained the requirements to obtain a Section 20(i) determination, which she described as the following:

> To obtain a 20(i) determination from FCIC, the requestor must show first that the AIP failed to comply with FCIC policies and procedures, and second that the failure resulted in the requestor receiving an amount less than they were entitled to receive under the applicable policy. A showing of "failure to follow" is more than an error or mistake. The conduct must be willful and egregious (complete disregard for an expressly stated, applicable rule). Secondly, the amounts claimed to be owed only apply to payments authorized by the policy.

(Id. at RMA002715). Applying that test to Plaintiffs' request, she found "no proof that [GAIC] failed to comply with FCIC policies and procedures," and determined that Plaintiffs "received the total amount [they] were entitled to under [their] polic[ies]." (Id. at RMA002712). Based on this finding, Manzano denied Plaintiffs' request for a Section 20(i) determination. (Id.). Days later, Plaintiffs appealed the RMA's Section 20(i) decision to the USDA's National Appeals Division ("NAD"). (Id. at RMA002696).

On June 15, 2023, the Hearing Officer for Plaintiffs' appeal, Mark A. Nelson ("Nelson"), issued an Appeal Determination. (Doc. No. 54-1 at RMA014177). Nelson applied the same standard of review for Section 20(i) determination as Manzano. (Id. at RMA014225–26). In doing so, he concluded that GAIC's conduct in adjusting and determining Plaintiffs' MPCI claims both failed to comply with FCIC policy and procedures, and was also willful and egregious. (Id.). However, Nelson agreed with Manzano that because GAIC paid in full Plaintiffs' arbitration award, they were not entitled to a Section 20(i) determination. (Id. at RMA014227 (finding Plaintiffs "failed to show RMA erred as it relates to [Plaintiffs'] receipt of the full indemnity due under their policies, with interest")).

7

On July 7 and 24, 2023, the parties sought a final Director Review though NAD. (Id. at RMA014240). On October 26, 2023, USDA's NAD Director, Frank Wood ("Wood"), issued a determination upholding in part and reversing in part the RMA decision. (Id.). In doing so, Wood applied the same Section 20(i) standard of review as Manzano and Nelson. (Id.). Upon applying that standard, Wood found that while the GAIC did fail to comply with FCIC policy and procedure, the failure did not rise to the level of willful and egregious conduct. (Id. at RMA014299). Further, Wood agreed with Nelson's determination that GAIC's full payment of the arbitration award to Plaintiffs precluded a Section 20(i) non-compliance determination in their favor. (Id.).

## II. LEGAL STANDARD

The parties each move for judgment on the administrative record, seeking review under 5 U.S.C. §§ 701–06. The APA provides the standard of review, stating in relevant part:

> [T]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706(2)(A). Because the facts have already been determined by the reviewing agency, "the entire case on review is a question of law." Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

The ultimate question this Court must decide is whether Defendants' agency action was arbitrary, capricious, an abuse of discretion, without observance of procedure required by law, or not in accordance with the law. 5 U.S.C. §§ 706(2) et seq. Under this standard, "the party challenging the agency's action must 'show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations.'" Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty., 286 F.3d 382, 389 (6th Cir. 2002) (quoting McDonald

8

Welding v. Webb, 829 F.2d 593, 595 (6th Cir. 1987)). The Court's review is "extremely narrow[,]" Oakbrook Land Holdings, LLC v. Comm'r, 28 F.4th 700, 720 (6th Cir. 2022), because the Court "may not substitute [its] own policy judgment for that of the agency." Fed. Commc'ns Comm'n v. Prometheus Radio Project, 592 U.S. 414, 423 (2021). Instead, the Court must "simply ensure[ ] that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained [its] decision[s]." Id.

Still, the Court "must ensure that the agency considered each 'important aspect of the problem' and issued a decision rooted in the law and facts." Kentucky v. U.S. Env't Prot. Agency, 123 F.4th 447, 468 (6th Cir. 2024) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 436 U.S. 29, 43 (1983)). Indeed, as relevant here, "[a]gency action is 'not in accordance with the law' when it is in conflict with the language of the statute [or regulation] relied upon by the agency." [3] City of Cleveland v. Ohio, 508 F.3d 827, 838 (6th Cir. 2007); see Marbury v. Madison, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the [court] to say what the law is."); see also 5 U.S.C. § 706 ("To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."); Loper Bright Enters. v. Raimondo, 603 U.S. 369, 398, 412 (2024) (the APA requires courts, not agencies, to "decide '*all* relevant questions of law' arising on review of agency action" and "must exercise their independent judgment in deciding whether an agency has acted within its

---

[3] Plaintiffs are unclear on *how* Defendants violated the APA, i.e., whether their agency actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). However, based on Plaintiffs' reliance on Loper Bright, and the nature of their arguments being legal, rather than factual, the Court can surmise that they contend Defendants' actions were not in accordance with the law. See Loper Bright Enters. v. Raimondo, 603 U.S. 369, 391 (2024) (discussing the APA's mandate that agency action not in accordance with the law be set aside). The Court will evaluate Plaintiffs' arguments through such lens.

9

statutory authority") (quoting 5 U.S.C. § 706).[4]  Still, when an agency is interpreting its own regulation and that regulation is ambiguous, the agency's interpretation is controlling unless it is "'plainly erroneous or inconsistent with the regulation.'"  Auer v. Robbins, 519 U.S. 452, 461 (1997) (quoting Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 359 (1989)).

**III.   ANALYSIS**

Because the parties raise cross-motions on the same issues, the Court will address their arguments together.  First, the parties dispute whether GAIC acted arbitrarily and capriciously in failing to comply with FCIC policy and procedures in denying entirely Plaintiffs' 2017 burley tobacco claims.  Second, the parties disagree on whether Defendants erred by applying a willful and egregious conduct standard to the first step of the Section 20(i) determination test to conclude that GAIC did not violate any FCIC policies or procedures.  Third, the parties clash on whether Defendants erred in finding that Plaintiffs received the total amount they were entitled to under their policies post-arbitration under the second step of the Section 20(i) determination.  Because the parties agree that Defendants that GAIC failed to comply with FCIC policy and procedures, the parties' second and third arguments control.  The Court will only address those.

   A.  Willful and Egregious Standard

On the parties' first dispute, Plaintiffs contend that Defendants erred by requiring Plaintiffs to show that GAIC failed to comply with the FCIC policy or procedures in a manner that was willful and egregious to satisfy the first prong of the Section 20(i) determination.  Defendants maintain that such an interpretation was correct.  Their argument is two-fold.  First, Defendants

---

[4] The Court's citation to Loper Bright here should not be mistaken as implying that Loper Bright overruled the deferential standard imposed under Auer deference.  While the rationale for overruling Chevron deference in Loper Bright may very well undermine Auer deference, that issue was not explicitly decided in Loper Bright.  See Loper Bright, 603 U.S. at 398, 412.  Accordingly, while the Court cites to Loper Bright for its emphasis on the demands the APA imposes on this Court for review, it will still apply Auer deference herein.

10

state that *Manager's Bulletin MGR-14-010* supports the RMA's and NAD's application of the willful and egregious standard to the Section 20(i) test. Second, Plaintiffs fail to give Wood's careful consideration of this issue due deference. For the foregoing reasons, the Court agrees with Plaintiffs.

The Court starts by interpreting the relevant text, Section 20(i). See Roberto v. Dep't of the Navy, 440 F.3d 1341, 1350 (Fed. Cir. 2006) ("The rules of statutory construction apply when interpreting an agency regulation."); United States v. Coss, 677 F.3d 278, 283 (6th Cir. 2012) ("The starting point for any question of statutory interpretation is the language of the statute itself.") (citation and quotations omitted). Section 20(i) of the *Basic Provisions* provides:

> (i) In a judicial review only, you may recover attorneys fees or other expenses, or any punitive, compensatory or any other damages from us only if you obtain a determination from FCIC that we, our agent or loss adjuster *failed to comply with the terms of this policy or procedures issued by FCIC* and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were entitled.

(Doc. No. 1-1 ¶ 20(i) (emphases added)); see 7 C.F.R. §§ 400.176(b), 400.352(b)(4).

None of the relevant language is defined in the applicable statutes or regulations. However, upon a plain reading of Section 20(i), and the mirroring language in the CFR, the text is clear: an insured cannot seek extra-contractual damages from an AIP or its affiliate unless it obtains a determination from the FCIC that the AIP or its affiliate did not comply with the FCIC's *Basic Provisions* policy, or procedures issued by the FCIC. See United States v. Grant, 979 F.3d 1141, 1144 (6th Cir. 2020) ("When interpreting a statute, we customarily consider the meaning an ordinary reader would give the statute's text."). In interpreting this language, the Court agrees with Plaintiffs that the provision contains no modifying language on an AIP's or affiliate's conduct. This rings true when evaluating the regulatory language as a whole, as both the *Basic Provisions* and the CFR are devoid of any language suggesting a "willful and egregious" standard

11

applies to the insurer or affiliate's actions in the context of a Section 20(i) evaluation. Yates v. United States, 574 U.S. 528, 537 (2015) ("The plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.") (citation and quotations omitted). To read Section 20(i) to impose such a requirement would require the Court to "read[] words or elements into [the regulation] that do not appear on its face[,]" in violation of basic interpretation principles. Cnty. Of Oakland v. Fed. Housing Fin. Agency, 716 F.3d 935, 940 (6th Cir. 2013) (citation and quotations omitted).

Because Section 20(i) is unambiguous on this point, "the judicial inquiry is complete." Desert Palace, Inc. v. Costa, 539 U.S. 90, 98 (2003) (citation and quotations omitted). Seeking to overcome the first portion of Section 20(i)'s obvious meaning, Defendants assert that *Manager's Bulletin MGR-14-010* "interpreting the regulation should be given deference[.]" Christensen v. Harris Cnty., 529 U.S. 576, 588 (2000). True, *Manager's Bulletin MGR-14-010* provides that "[o]n a case-by-case basis, RMA will review the record to determine if the AIP or its affiliates willfully and egregiously failed to comply with the terms of the policy or procedures issued by FCIC" when making Section 20(i) determinations. (Doc. No. 42-8 at RMA008831). But deference to Defendants' decision to impose that standard on Plaintiffs here is not warranted given that "Auer deference is warranted only when the language of the regulation is ambiguous." Id. Because "[t]he regulation in this case, however, is not ambiguous[,]" "[t]o defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation." Id. This does not change irrespective of Wood's rationale for concluding such interpretation was appropriate. (See Doc. No. 61 at 4–5).

12

Based on the Court's straightforward interpretation of the first prong of Section 20(i), Defendants' application of the "willful and egregious" standard to GAIC's conduct artificially heightened the regulatory standard applied to Plaintiffs. Doing so was plainly inconsistent with the applicable regulatory language. See City of Cleveland, 508 F.3d at 838. Manzano, Nelson, and Wood all applied the willful and egregious standard to GAIC's conduct in denying Plaintiffs' insurance claims. See supra, Section I.C. Upon final review, Wood found that the RMA was within its authority to apply the willful and egregious conduct standard, and ultimately used it to deny Plaintiffs' Section 20(i) requests. (Doc. No. 54-1 at RMA014297–98). While Defendants are correct that Loper Bright allows courts to "seek aid from the interpretations of those responsible for implementing particular statutes," Loper Bright, 603 U.S. at 371, that instruction, and the lenient deference afforded Defendants under Auer, does not go so far as to entitle Defendants to interpret Section 20(i) in a manner that is not reflected in its text. Because Defendants applied a blanket application of the willful and egregious standard to the first prong of the Section 20(i) determination, without any textual justification for doing so, Plaintiffs are correct that the Section 20(i) determination was not in accordance with the law and must be reversed. Accordingly, Plaintiffs' motion will be granted in this respect, and Defendants' motion will be denied.

      B. Payment of Insurance Policies

Because the Section 20(i) determination is a two-part inquiry, the Court must address the parties' dispute on the second prong. On that issue, Plaintiffs assert that Defendants again erred in interpreting the second prong of Section 20(i). Plaintiffs contend they were illegally denied payment of indemnification and interest when GAIC made its initial coverage decision. In response, Defendants assert there is no textual justification for Plaintiffs' position, and the NAD Director's interpretation that Plaintiffs got what they were entitled to post-arbitration is supported by the plain text of Section 20(i).

Again, the Court applies the same statutory interpretation principles as used in interpreting the first prong of Section 20(i). See supra, Section III.A. Section 20(i)'s text reads:

> (i) In a judicial review only, you may recover attorneys fees or other expenses, or any punitive, compensatory or any other damages from us only if you obtain a determination from FCIC that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you *receiving a payment in an amount that is less than the amount to which you were entitled*.

(Doc. No. 1-1 ¶ 20(i) (emphases added)); see 7 C.F.R. §§ 400.176(b), 400.352(b)(4).

With none of these terms defined in the relevant statutes or regulations, the Court interprets the plain language of the second prong in accordance with their ordinary meanings. Coss, 677 F.3d at 283. In doing so, it interprets the second prong to mean that a Section 20(i) determination is warranted if the AIP's or affiliate's error resulted in Plaintiffs receiving an insurance payment for less than what they were entitled absent that noncompliance. Of course, here, Plaintiffs received nothing at the initial GAIC determination. The parties dispute whether that controls.

The remainder of the regulatory scheme, including other portions of Section 20(i), handily resolve the parties disagreement. See Yates, 574 U.S. at 537 (interpretation focuses on not just the language at issue, but the scheme as a whole). Looking at other clauses in the *Basic Provisions*, it is evident that the determination of whether an AIP's or its affiliate's error led to an insured being paid less than entitled is measured at the time the AIP or affiliate made their erroneous indemnification decision. For starters, the first portion of Section 20(i) states that the purpose of judicial review is for the recovery of "attorneys fees or other expenses, or any punitive, compensatory or any other damages" if the FCIC determines that the two Section 20(i) conditions are met. (Doc. No. 1-1 ¶ 20(i)). See Williamson Farm v. Diversified Crop Ins. Servs., 917 F.3d 247, 257 (4th Cir. 2019). Next, the Court reads this provision in connection with Section 20(b)(2), which mandates arbitration of any disputed indemnification decision prior to judicial review for

14

extra-contractual damages. (Doc. No. 1-1 ¶ 20(b)(2)). Reading these provisions together, the *Basic Provisions* require insureds to first challenge an insurer's decision in arbitration, and *then* seek extra-contractual damages, if appropriate. (Doc. No. 1-1 ¶¶ 20(b)(2), 20(i)).

With this background, only one reasonable interpretation of the second prong of Section 20(i) follows. Section 20(i) is meant to compensate insurers who suffered from incorrect indemnification decisions that violated the FCIC's policy and procedures, and thereafter were forced to engage in arbitration proceedings to obtain the indemnification and interest that they were always entitled. See supra, Section I. That the arbitrator could not award extra-contractual damages to an insured that succeeds against an insurer in those proceedings, even if the arbitrator wanted to, supports this. See Williamson Farm., 917 F.3d at 257 (arbitrator exceeded authority by awarding extra-contractual damages in arbitration proceedings). Accordingly, viewing the *Basic Provisions* as a whole, the Section 20(i) determination threshold applies to the amount, if any, Plaintiffs were awarded by GAIC when it made its loss value determination based on the FCIC noncompliant conduct. See Yates, 574 U.S. at 537 (courts should look to the context and entire scheme of text to determine its meaning).

Indeed, to interpret the second prong of the Section 20(i) determination as Defendants suggest would render Section 20(i) and the mirroring CFR provisions meaningless. See United States v. Jones, 107 F.3d 1147, 1159–60 (6th Cir. 1997) ("[W]e must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.") (citation and quotations omitted). If Defendants' interpretation of the second prong of Section 20(i) was correct, no insured would ever be entitled to a Section 20(i) determination to seek extra-contractual damages so long as the insurer paid the insured its rightfully-owed

15

indemnity post-arbitration. This remains true even if the insurer acted willfully and egregiously in initially denying the insured's claim, and despite the regulations *mandate* that the insured attend arbitration (and incur the costs of it) to get the funds it was always entitled. Under Defendants' interpretation, if the insured wins at arbitration, it can never recoup the costs of that arbitration and other damages from the insurer *because* of its success. Following that rationale, it is difficult to surmise a circumstance where an insured would ever be able to obtain, or want to obtain, a favorable Section 20(i) determination. Indeed, any insured that believes the insurer was noncompliant with FCIC policy and procedures in denying the insured indemnity would have to go through arbitration prior to seeking that determination. Given these pitfalls, Defendants' interpretation of Section 20(i) flies in the face of logic and improperly renders its mandate meaningless. See Shelter Distribution, Inc. v. Gen. Drivers, Warehousemen & Helpers Loc. Union No. 89, 674 F.3d 608, 612 (6th Cir. 2012) (rejecting a statutory interpretation that would be illogical).

As the Supreme Court has opined, "[i]t is one thing to expect regulated parties to conform their conduct to an agency's interpretations once the agency announces them; it is quite another to require regulated parties to divine the agency's interpretations in advance or else be held liable when the agency announces its interpretations for the first time in an enforcement proceeding and demands deference." Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 158–59 (2012). Because Defendants interpreted the second unambiguous section of Section 20(i) in a manner that is contrary to the language of the applicable regulations, and in a manner Plaintiffs could not have possibly predicted given the context of the regulations and the other *Basic Provisions*, Defendants' interpretations are not entitled to Auer deference or other leniency. See Christensen, 529 U.S. at 588. Accordingly, Defendants' conclusions that Plaintiffs were not entitled to a Section 20(i)

16

determination because they received their full insurance payment from GAIC post-arbitration is rejected as not in accordance with the law and cannot stand. See id. Given this, the Court will grant Plaintiffs' motion in this respect and denying Defendants'.

  C. The Appropriate Remedy

Absent from Plaintiffs' briefing, but relevant to these proceedings, is the appropriate recourse for Plaintiffs' successful motion. While "[a]n administrative remand may be appropriate when an agency procedurally errs by failing to articulate a reasoned basis for its decision[,]" remand is "futile and improper" where an agency legally errs. Union Pac. R. Co. v. U.S. Dep't of Homeland Sec., 738 F.3d 885, 901 (8th Cir. 2013). Indeed, courts "simply will not remand '[w]here application of the correct legal standard could lead to only one conclusion.'" Id. (quoting Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010)).

As Defendants all but concede a holding that Defendants legally erred in their interpretations of both prongs of the Section 20(i) determination analysis "lead[s] to only one conclusion": that Plaintiffs are entitled to a favorable Section 20(i) determination. Zabala, 595 F.3d at 409. Indeed, Defendants admit that NAD Director Wood determined that GAIC was not compliant with FCIC policy and procedures. (See Doc. No. 61 at 3 (noting that NAD Director concluded that GAIC failed to comply with FCIC policy and procedure)). They further concede that Plaintiffs did not receive the full indemnity they were entitled to when GAIC made its initial loss determination. (See Doc. No. 53 at 5 (citing arbitrator's award from GAIC to Plaintiffs)). Because "only one conclusion[,]" issuing Plaintiffs a Section 20(i) determination and giving them the green-light to judicial review, "would be supportable" on remand, remand may not be necessary. Donovan v. Stafford Constr. Co., 732 F.2d 954, 961 (D.C. Cir. 1984).

Even still, Defendants possess "specialized experience and broader investigations and information" than is available to this Court. United States v. Mead Corp., 533 U.S. 218, 234 (2001)

17

(citation and quotations omitted). Given this, the Court feels compelled to let Defendants manage their own affairs with as little court intervention as possible. Accordingly, the Court will remand this matter back to Defendants to reconsider Plaintiffs' Section 20(i) requests in a manner not inconsistent with this Memorandum Opinion.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Judgment on the Record (Doc. No. 50) and Plaintiff's Motion to Supplement Agency Record (Doc. No. 54) will be granted, and Defendants' Motion for Judgment on the Record (Doc. No. 52) will be denied.[5]

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

---

[5] Because the Court will grant Plaintiffs' Motion (Doc. No. 50), it need not reach the question of whether they are entitled to a pronouncement that they are "free to see extra-contractual damages . . . without the benefit of a Section 20(i) non-compliance determination." (Doc. No. 1 ¶ 48).